STATE of Missouri, Respondent,

v.

John H. GRISCO, Appellant.

No. 27758.

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

Thomas M. Larson, Public Defender, Richard G. Roth, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT W. WELBORN, Special Judge.

John Grisco was charged by indictment by a Jackson County Grand Jury with second degree murder in the shooting death of Mary Ann Holden. On a jury-waived trial, the court found Grisco guilty of manslaughter and fixed his punishment at eight years' imprisonment.

A party on August 17, 1974, in an apartment at 3942 Paseo in Kansas City, terminated in the shooting of Mary Ann Holden by John Grisco, resulting in the death of

Ms. Holden. Present at the shooting in addition to Grisco and the victim were Jean Ferrell, who described Grisco as her "boyfriend," and Andre Holden, the son of Jean. Ms. Holden and Ms. Ferrell were sisters. The shooting culminated an argument between Grisco and Ms. Holden over Grisco's bringing the .45 caliber pistol used in the shooting into the apartment and "leaving it laying around loaded."

Andre Holden and Ms. Ferrell testified at the trial that John Grisco fired the shot which resulted in the death of Ms. Holden. A police officer in the vicinity whom Andre told of the shooting shortly after it occurred testified that he saw a man whom he later found to be John Grisco leaving the apartment building with a weapon in his hand and that he placed Grisco under arrest.

The sole ground of error on this appeal arises out of the following which occurred after the state had closed its case in chief and the defense counsel had moved for a directed verdict:

"MR. SIMONS (defense attorney): First of all, it has been my careful observation during the course of this trial that while much has been said about a shooting and much has been said about a man named John Grisco, no one has yet identified the defendant as that individual. I would, therefore, move that the case against this gentleman be dismissed as no evidence has come in that he was the person who stood in that room, and he is the person who pulled the trigger. I believe a review of the record would reveal that fact.

\*      \*      \*      \*      \*      \*

"THE COURT: \* \* \* What does the State say about the man being identified as the man that did the shooting?

"MR. ROSEN (prosecuting attorney): I think he has properly been identified by the witnesses. I think Andre Holden and Jean Ferrell said they were present, and that John Grisco did, in fact, fire the shots that killed Mary Ann Holden.

"THE COURT: His point is how do we know that this man sitting here is John Grisco if you never asked them to identify him?

"MR. ROSEN: I believe I did ask who fired the shots, and they did say John Grisco.

"THE COURT: I am not sure you did. I don't know. I never had this come up before, because—if you didn't ask them to identify the defendant, it's the first time I ever tried one where the Prosecutor didn't ask the witness to identify a defendant. I don't know if I had it come up before—I don't know if we can assume if the defendant named as John Grisco, the fact the witnesses referred to John Grisco, they are talking about the same person or not.

"MR. SIMONS: Your Honor, I would suggest that in a case of this nature and a case of this seriousness it's a rather broad assumption that because a man is sitting at the counsel table he is necessarily the person who is referred to by witnesses.

"THE COURT: We will take a recess. If you want to get a witness in, I will let you reopen your case.

"MR. ROSEN: All right. Thank you, Your Honor.

"RECESS

"THE COURT: All right. Are you ready to proceed?

"MR. ROSEN: We are, Your Honor.

"THE COURT: Are you requesting leave to reopen your case?

"MR. ROSEN: The State is requesting permission at this time to reopen its case.

"THE COURT: Over the objection of defendant leave is granted.

"Did you want to object more specifically?

"MR. SIMONS: Only to state, Your Honor, the State of Missouri has rested. The burden is on the State to prove its case in chief. The defendant is owed the full measure of the State's proof. If it has

failed it is not the duty of the Court or anybody else to advise the State. The State rested its case, concluded its case, and failed to prove its case. I object at this time and ask for a mistrial at this time to cure the injustice done the defendant if the State is given leave to reopen its case.

"THE COURT: Thank you.

"State is given leave to reopen its case.

"STATE'S EVIDENCE (CONTINUED)

"ANDRE HOLDEN, previously called as a witness on behalf of the plaintiff, State of Missouri, being first duly sworn by the Deputy Clerk of the Court, was recalled to the witness stand, and testified further as follows:

"REDIRECT EXAMINATION BY MR. ROSEN:

"Q. Mr. Holden, you are still under oath. On the night—

"THE COURT: What is your name?

"THE WITNESS: Andre Holden.

"THE COURT: You have testified here previously?

"THE WITNESS: Yes.

"MR. ROSEN: Do you require that he be resworn?

"THE COURT: No. I require he be reidentified, so the record will show who is talking.

"Q. (By Mr. Rosen) Mr. Holden, on the night of August 17th, 1974, you have testified that you were present at 3942 Paseo when Mary Ann Holden was shot and killed, is that correct?

"A. Yes.

"Q. Is the person who you witnessed fire the shot that killed Mary Ann Holden present in the courtroom today?

"A. Yes.

"Q. Would you point him out, please?

"A. It's the defendant, John Grisco.

"Q. I want you to describe him and his place at the table.

"A. He is sitting at the side of the District Attorney.

"Q. Apparently you are referring to Mr. Simons?

"A. That's right.

"MR. SIMONS: I object.

"THE COURT: The District Attorney is the one that is asking you questions. Do you want to answer the question again?

"Q. (By Mr. Rosen) Where is the person who you have just referred to as being John Grisco?

"A. He is sitting at the table opposite the Prosecuting Attorney.

"Q. I am the Prosecuting Attorney, Mr. Holden. Are you referring to the gentleman seated first at the table?

"A. Yes.

"MR. SIMONS: I object to this as leading. Why don't he stand behind the defendant and ask him if that is the man, if he wants to lead the witness?

"THE WITNESS: You said the District Attorney is asking me questions.

"THE COURT: Yes. That is him over there. You said—

"THE WITNESS: This is the District Attorney (indicating).

"THE COURT: No. That is him over there, see him, standing?

"THE WITNESS: Well, he is sitting next to the Prosecuting Attorney.

"THE COURT: Would you get—if you see the man in the courtroom that you say fired the fatal shot, will you get out of the chair and reach a point where you can point to him?

"THE WITNESS: Yes.

"THE COURT: All right. That is him?

"THE WITNESS: Yes.

"MR. ROSEN: Let the record show that—

"Q. (By Mr. Rosen) And you know that man by what name?

"A. John Grisco.

"Q. He was the man present that evening—

"A. Yes.

"Q. —who fired the shots?

"A. Yes.

"MR. ROSEN: Let the record show Mr. Holden has identified John Grisco as being seated at the counsel table, and as the defendant.

"I have no further questions.

"MR. SIMONS: I have no questions.

"THE COURT: You may step down."

■ Appellant's point on this appeal is stated as follows:

"THE COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE PROSECUTING ATTORNEY TO ASK LEADING AND SUGGESTIVE QUESTIONS OF THE STATE'S WITNESS ANDRE HOLDEN WHEN THE STATE WAS PERMITTED TO REOPEN ITS CASE FOR THE PURPOSE OF IDENTIFYING THE DEFENDANT, AN ESSENTIAL ELEMENT OF PROOF WHICH WAS OVERLOOKED DURING THE STATE'S CASE IN CHIEF."

There is no merit in this assignment. There is no question that Andre Holden was acquainted with appellant. In his original testimony he referred to Grisco by name, said that he had known him since February 1974, and that Grisco was involved in "some sort of romantic relationship" with his mother. The confusion of the witness when recalled upon the reopening of the state's case was not over the identity of the defendant, but over the role of the various attorneys. The definitive identification of the defendant by the witness was the result of a direction by the court, not a question of the prosecuting attorney to which appellant's counsel objected as leading.

■ The ultimate answer, however, to the assignment of error is to be found in the fact that, after his motion for directed verdict had been overruled, the appellant took the stand and testified that he held the gun at the time of the firing of the fatal shot. He claimed that the gun discharged accidentally when Ms. Ferrell knocked his arm, but he clearly acknowledged that he was the person charged with the offense. See *State v. Grey*, 525 S.W.2d 367, 370[8–10] (Mo.App.1975).

Appellant makes oblique reference to the court's permitting the state to reopen its case and to the court's participation in the interrogation of Holden, but he has not assigned either as a ground of error and has not briefed either claim. Therefore, nothing has been presented for review by this court on either on these grounds.

Judgment affirmed.

All concur.